## George McCullough *vs.* The Annapolis and Elkridge Railroad Company.—*June* 1846.

By the act of 1841, chap. 168, the *Annapolis & Elkridge Railroad Co.* were authorised to issue bonds, to an amount not exceeding, &c., in the names of the creditors of that company, as payees. A special fund was designated in the act for the payment of interest, the principal being irredeemable for thirty years. Another section of the act referred the claims of *P.* to the arbitrament of *L.*, and any amount so found due him, should be paid in like manner as the claims of other creditors, "and not otherwise." Held : that the creditors for whom provision is made, as aforesaid, were to be creditors of the company at that time ; and the fund thereby created, is for the payment of those claims, and none others. All the, then, creditors have an interest in it ; and of which they couldnot be deprived by the board of directors of the company, without their consent.

To entitle *P.* to an interest in this fund, he must submit his claim to the award of *L.*, which is conclusive, and so of his assigns. The proof of such submission is upon him, and the directors of the company could not authorise their president to issue a bond to the assignee of *P.*, payable out of the fund created by that act, unless *P*'s claim had been first ascertained by *L.*

And where the legislature, by a subsequent act, (1843, chap. 188,) submitted the claim of *P.* to other arbitrators, to proceed *de novo,* disregarding the act of 1841, and directed the company to issue the bonds mentioned in the *first* act, to such additional amount as would be sufficient to pay the *second award.* It was further *held,* that the creditors of the company, or such of them as had agreed to the law of 1841, and their claims ascertained by the company, have an interest in the fund, and without their consent, no part of it could be applied to the payment of any debt for which the act of 1841 did not provide.

Until creditors to whom bonds were issued under the act of 1841, are satisfied, the fund provided by that act belongs to them, and cannot be taken from them.

Under the charter of the *Annapolis and Elkridge Railroad Company,* (1836, chap. 298,) many of the provisions of which are borrowed from that of the *Baltimore & Ohio Railroad Company,* the directors thereof cannot, by resolution or by-law, deny either to the president of the company or the directors appointed by the State, the same right to vote upon the various questions to be decided by the president and directors, as those who are elected by the stockholders possess.

The president of that company, therefore, cannot by resolution have his right to vote restrained to the mere right of giving a casting vote in case of a tie.

Appeal from *Anne Arundel* county court.

On the 21st April 1846, the appellant filed his petition, alleging, that heretofore, on or about the 14th February 1846,

the *Annapolis and Elkridge Railroad Company*, by their resolution duly passed, authorised and directed the president of the said company to issue to *Passmore McCullough*, or to his order, or to his assignees, if it should appear that any assignment had been made prior to the said resolution, certain bonds which the said company were authorised to issue under an act of the General Assembly of 1841, ch. 168, to the amount of $4227.96, after deducting from said amount whatever interest might be due on the several claims of *Robert Welch, of Ben.*, for which bonds were, on the said day, directed to be issued to the said *Welch*, provided that before the said bonds should be issued to the said *McCullough*, he should file with the president of the said company a written obligation, to be approved by the counsel of the said company, discharging the said company of any indebtedness to him on any account whatever. That the said *Passmore McCullough* had, previously to the passing of the said resolutions, assigned to your petitioner of his claim upon the said company to the extent of $3116.39; and afterwards, that is to say in the month of March in the said year, the said *Passmore McCullough* presented to the said president, and offered to file with him his release to the company, duly approved by *Thomas S. Alexander, Esq.*, counsel of the said company, wherein he discharged and exonerated the said company from all claims which he had against them, which was duly executed under his seal, and thereby authorised and required the said president to issue to your petitioner bonds directed to be issued under said resolution, to the extent of the sum of $3116.39, all which will more fully appear by a reference to the said release, herewith filed and marked exhibit A. That on the day on which the said *Passmore* offered to file with the said president his said release, your petitioner, by his counsel, demanded the issue of the said bonds, according to the said resolution, which the said president positively and peremptorily declined and refused to do, alleging, that the said resolution was not properly passed, because he, as president, had not been permitted to vote at the meeting of the president and directors of the said company, at which the said resolution was passed; whereas your petitioner avers, that the majority of

the said directors had determined that the said president had no right to vote in the said matter, under an existing by-law of the said company, which prevented his so doing, and that whether he had or had not voted, and the reason of his not voting could not and did not in anywise concern your petitioner, or affect his right to the said bonds as aforesaid, directed by the said resolution to be issued as aforesaid. That at the time of the passing of the said resolution, and ever since, up to the present time, *James Iglehart*, of the city of *Annapolis*, was and still is, president of the said company, and that as such, the said *James Iglehart* has refused, as aforesaid, to issue the said bonds above demanded by your petitioner, as aforesaid, and that by means of his said refusal to issue the said bonds, your petitioner has suffered great injustice and is without remedy, except by the interposition of your honors by the State's writ of *Mandamus*. And he therefore humbly prays, that the State's writ of *Mandamus*, may be issued by your honors, to be directed to the said *James Iglehart*, president of the *Annapolis and Elkridge Railroad Company*, commanding him, without any further delay and all excuses set apart, to issue to your petitioner and in his favor, bonds to the extent of $3116.39, as authorised and directed by the said resolution ; and the said *George McCullough* further shews, that it was the duty of the said *James Iglehart*, as president of the said company, to issue and put the corporate seal of the company to the said bonds, and in proof thereof and of the passage of the said resolution, herewith files as part of his petition, exhibits B and C.

This petition was verified by the oath of the petitioner.

Exhibit A.—Whereas by a resolution of the board of directors of the *Annapolis and Elkridge Railroad Company*, passed on the 14th day of February 1846, the president is directed to issue bonds to *Passmore McCullough*, or to his order, or to his assignees, authorised under the act of 1841, ch. 168, to the amount of $4427.96 ; and it is further provided, that before the said bonds shall be issued as aforesaid, the said *McCullough* shall file with the president of the company a written obligation, to be approved by the counsel of the company, discharging the company of any indebtedness to him on

any account whatever; and whereas the said president is about to issue bonds, as aforesaid, to *James Murray*, of the city of *Annapolis*, to the amount of $519.79, and to *George McCullough* to the amount of $3116.39, amounting in the aggregate to the aforesaid sum of $4427.96, after deducting from said last amount the sum of $282.78, for interest due on the claims of *Robert Welch, of Ben.* Now this obligation witnesseth, that the said *Passmore McCullough*, in consideration of the delivery of the said bonds to the said *James Murray*, *William Schley* and *George McCullough*, and concurrently with the execution of these presents, doth hereby release, acquit, exonerate and discharge the *Annapolis and Elkridge Railroad Company* from all claims and demands whatsoever, which the said *Passmore McCullough* hath or ever had, or might have at any time, against the said *Annapolis and Elkridge Railroad Company*, founded on or arising out of any dealings or transactions which has ever been had between the said company and the said *McCullough*. In witness whereof, the said *Passmore McCullough* hath hereunto set his hand and affixed his seal, on this 24th day of February, in the year 1846.

PASSMORE McCULLOUGH,   (Seal.)

Signed, sealed and delivered in the presence of *H. McCullough.*

Upon which said exhibit was thus endorsed, to wit:

"The resolution within recited, refers to nothing more than the form of the release to be given by *Mr. McCullough*, for my approval; I think the within is in form right.

*Feb'y 24th* 1846.                    TH. S. ALEXANDER."

Exhibit B.—At a meeting of the president and directors of the *Annapolis and Elkridge Railroad Company*, held on Saturday, the 14th February 1846. Present, *James Iglehart, Esq.*, president, *Nicholas Brewer, George Wells, George McNeir, William Bryan, James H. Iglehart, Joseph H. Nicholson, Dennis Claude, William T. Wootton, Stevens Gambrill*, directors.

Among other, were the following proceedings, to wit:

The board proceeded to the consideration of the report of the committee upon the memorial of *Passmore McCullough*,

asking the issue of bonds under an award of arbitrators, when *Col. Wootton* submitted the following resolution :

*Resolved*, That the president of this company issue bonds to *Passmore McCullough*, or to his order, or to his assigns, (if it shall appear that any assignment of his claim against this company, has been made previous to the passage of this resolution,) authorised under the act of 1842, ch. —, to the amount of $4427.96, after deducting from said amount whatever interest may be due on the several claims of *R. Welch, of Ben.*, for which bonds were this day directed to be issued; *provided*, that before said bonds shall be issued as aforesaid, the said *McCullough* shall file with the president of this company, a written obligation, to be approved by the counsel of the company, discharging the company of any indebtedness to him on any account whatever, which was read, when *Judge Brewer* offered the following as an amendment, to commence after the word assigned : "or to such person as the attorney shall determine to be entitled to receive said bonds."

The president here insisted upon his right to vote, and that he should, if permitted, vote for the amendment, but a majority of the directors refused to permit his vote to be taken, and the question was then taken by yeas and nays, as follows :

Affirmative.—*Messrs. Brewer, Wells, James H. Iglehart, Claude*, 4. Negative.—*Messrs. McNeir, Bryan, Nicholson, Wootton, Gambrill*, 5. Determined in the negative, the vote of the president not being counted, and the amendment rejected.

The question then recurred upon the original resolution—the president again insisted upon his right to vote, and declared that if permitted, should vote against the resolution—but his vote being again rejected by a majority of the directors, and the yeas and nays being taken, appear as follows :

Affirmative.—*Messrs. McNeir, Bryan, Nicholson, Wootton, Gambrill*, 5. Negative.—*Messrs. Brewer, Wells, James H. Iglehart, Claude*, 4. Determined in the affirmative, the vote of the president being excluded, and the resolution adopted.

True extract from record of proceedings.

N. H. GREEN, Sect'y.

Exhibit C.—Extract from the by-laws of the *Annapolis and Elkridge Railroad Company.*

It shall be the duty of the president to exercise a vigilant supervision over all the operations of the company, he shall conduct the general correspondence of the company, shall attend to the titles of its real estate, and do all the business of attorney of the company, shall sign all certificates of stock when issued, shall carry into effect all such orders as the board shall direct, shall preside at the meetings of the board, and give the casting vote where there is a tie, shall submit for the consideration of the board such subjects as in his opinion will promote the interest of the company, shall cause minutes of the proceedings of the board to be carefully kept and plainly recorded, in case of the absence of the president, his place may be supplied by a president *pro tem.*, by such director as he under his hand shall appoint, and in future to make such appointment by the board.

Five directors and the president shall be necessary on all occasions to constitute a quorum for business, and a majority of the votes present shall be necessary to decide any question affirmatively, questions may be decided by yeas and nays when required by any member, a motion to adjourn shall be always in order, and a motion to postpone shall take precedence of all others, except that to adjourn.

True extracts from record of proceedings.

N. H. Green, Sect'y.

Memorandum. The last paragraph of the aforegoing petition, commencing with the words "and the said *George McCullough*," was inserted as an amendment to the same, on the motion of the said *George McCullough*, by his attorneys aforesaid, and by leave of the court here first had and obtained, on the day of the hearing of the said petition, being the 25th day of the said month; and at the same time, the exhibits B and C, therein set forth, were filed as part of said amendment.

The county court dismissed the petition, with costs, and the petitioner prosecuted this appeal.

By the act of 1841, chap. 168, it was enacted, that the *A. & E. R. Co.*, be authorised to issue their bonds to an amount not

exceeding $80,000, in the names of the creditors of the company, as payees, for their respective claims against the company, to be ascertained by the *president and directors* thereof, with the exception of the claims thereinafter referred to, irredeemable, except at the pleasure of the company or of the *State*, until after the expiration of thirty years : and the *faith of the company* was pledged for the ultimate payment. The bonds to be received by creditors, in full satisfaction of the claims of creditors against the company.

By the 2nd sec., the interest on those bonds was payable *exclusively* out of the net profits of the company, and the profits which the State may derive from the use of the railroad in connection with the *Washington* branch of the *B. & O. Railroad*, to the extent of seven-fifteenth parts.

The 5th sec. declared, that the claims preferred by *Passmore McCullough*, &c., against the *A. & E. Co.*, should be submitted to the arbitrament of *J. C. Le Grand*, whose award shall be final; and if the arbitrator shall award any thing to be due, the amount thereof shall be certified to *A. & E. Co.*, who shall thereupon execute and deliver to him a bond for the amount so awarded, and payable, principal and interest, as aforesaid, and in no other way; and secured, &c.

By the act of 1843, chap. 188, the claims of *P. McC.*, were submitted to the arbitrament of *J. W.* and *J. G.*, with power to call in an umpire, the award of any two to be conclusive: the arbitrators were to proceed *de novo*, disregarding the award made under the act of 1841, chap. 168, charging him with any sum, &c., *P. McC.* had received under that award.

The 3rd sec. enacted, that "the company be, and they are hereby authorised and directed, to issue their bonds authorised by the above mentioned act, (1841, 168,) *to such an additional amount as may be requisite and sufficient* to pay the amount which may be found due, under the provisions of this act, to the said *P. McC.*, which he is to receive at par, in satisfaction for any sum found due him."

By the act to incorporate the *Annapolis and Elkridge Railroad Company*, (1836, chap. 298,) it is enacted, that "the election and continuing the succession of the president and

directors; the mode of voting and filling vacancies;"—the powers of the president and directors, with the mode of their qualification, shall be the same as is described in the 3rd, 4th, 6th, 7th, 8th, 9th, 10th, 12th and 13th sections of the act to incorporate the *Baltimore and Ohio Railroad Company.*"

It also enacted, that "on a subscription being made on behalf of the State, the governor and council shall have power to appoint annually one director."

And by the 5th sec., that "the *president and directors* of the company shall be invested with all the rights and powers necessary to the construction and repair of a railroad from the city of *Annapolis* to, &c., with as many sets of tracks as the said president and directors, or a majority of them, may think necessary."

The 6th sec. of act of 1826, chap. 123, authorised the stockholders of the *B. & O. Railroad Co.* to elect, by ballot, twelve directors, and these twelve directors, or a majority of them, shall have power of electing a president of the company, either from amongst the directors or others.

The 12th sec. enacted, "that the said president and directors, or a majority of them, may appoint all such officers, &c., and to determine by their by-laws the manner of adjusting and settling all accounts."

The cause was argued before ARCHER, C. J., CHAMBERS, SPENCE, MAGRUDER and MARTIN, J.

By McLEAN and W. SCHLEY for the appellant, and
By T. S. ALEXANDER for the appellees.

MAGRUDER, J., delivered the opinion of this court.

The appellant applied by petition to the judges of *Anne Arundel* county court for a writ of *Mandamus*, to be directed to *James Iglehart*, as president of the *Annapolis and Elkridge Railroad Company*, requiring him to execute a bond to the petitioner. This application seems to have been grounded upon a resolution of the board of directors, directing the president of the company to issue bonds to *Passmore McCullough*, or to his order, or to his assignees, if it should appear that any

9    v.4

assignment of his claim against this company had been made previous to the passage of this resolution, authorised under the act of 1842, chap. —, to the amount of $4427.96, after deducting from said amount whatever interest may be due on the several claims of *R. Welch,* of *Benj.*, for which bonds are, this day, directed to be issued, with a proviso, that before the bonds are issued, he shall file with the president a written obligation, discharging the company from any indebtedness to him on any account whatsoever.

How much is due to *Passmore McCullough,* after making these deductions, does not appear in the record. But the petition of the appellant states, that of this sum the said *Passmore* had assigned to the petitioner $3116.39, previously to the passage of the resolution.

He applied to the president, and offered to file with him the release required. Thereupon the petitioner, by his counsel, demanded the issue of said bonds, according to the resolution, which he, (the president,) peremptorily refused to do. He insists that he is entitled to the bonds, and prays that a *Mandamus* may be issued, requiring him to execute them.

No such act as that alluded to in the resolution is to be found, but in the release which *Passmore McCullough* executed, and which accompanies his petition, reference is made to the act of 1841, chap. 168; and certainly there is nothing in that act of Assembly which authorises those proceedings. By a reference to that law it will be found, that the amount of the claim of this individual, if he had any against the company, was to be ascertained by *John C. Le Grand, Esq.*, and that neither the board of directors, nor the president and board of directors, had any authority to issue bonds to him for any amount, not authorised by that gentleman; unless this sum was awarded by *Mr. Le Grand,* the president of the board could not be bound, in obedience to the resolution, to issue the bonds, as the board of directors was not authorised to issue them, until the amount was certified to them by the arbitrator.

All claims against the company then existing, with the exception of those of *McCullough* and another, are to be ascertained by the president and directors of the company,

but with the adjustment of the claims of those individuals, the company is not charged.

It is obvious, that the creditors for whom provision is made by the act of Assembly, were to be creditors of the company at that time, and the fund thereby created, is a fund for the payment of those claims, and none others. It is a fund in which all the, then, creditors may have an interest, and of which they could not be deprived by the board of directors, without their consent. The assignor of the petitioner is a person who may have a claim against the company. To entitle him to any interest in this fund, he must consent to submit his claim to *Mr. Le Grand,* and that his award shall be final and conclusive: (*see* the Act of Assembly.) To this mode of having his claim finally adjusted, he was not bound to consent; but unless he *does* consent to it, the act of 1841 makes no provision, whatever, for the payment of any claim which he may have against this company. It does not appear in the record that he did consent to such arbitrament. *Mr. Le Grand* may or may not have awarded, in the premises, No resolution of the board of directors can authorise the president, or any other officer, to issue a bond, (payable out of that fund,) which is not authorised by the law which creates the fund; we certainly cannot infer from that resolution, (even if it was legally passed,) that the sum mentioned in it was the sum, or any part of the sum, ascertained by *Mr. Le Grand* to be due to this person. The language of the resolution would lead to a different conclusion, and besides this, the act of 1841 does not authorise a bond or certificate of debt to be issued to any other than the creditor himself.

We have also been referred to the act of 1843, chap. 180. But the creditors of the company, or such of them as agreed to the law of 1841, and have had the amount of their claims ascertained by the president and directors, have an interest in this fund, and without their consent no part of it must be applied to the payment of any debt for which the act of 1841 does not provide. Now, the claim of *McCullough,* as ascertained by the persons named in the act of 1843, is not one of the claims for which the act of 1841 provides. If the board of

directors can apply any portion of these funds to procure from *McCullough* a release of all his claims, it might next attempt to pay debts since contracted, out of the same fund. Until the creditors, to whom bonds were issued in virtue of the act of 1841, are satisfied, these funds belong to them, and cannot be taken from them. But it nowhere appears that the resolution is grounded upon any award, given in virtue of the act of 1843.

But it is said, that the president of the company, *(Mr. Iglehart,)* when the application was made to him for the bonds, assigned no reason for refusing to issue them, save this, that he was not allowed by the board to vote on the occasion; and the appellant has furnished us with a copy of the proceedings of the board, whereby it appears, that the directors excluded the president from voting, and thereby obtained a majority in favor of the resolution. These doings, it is insisted, are authorised by the charter of this company, and we are referred to a clause in the charter of the *Baltimore & Ohio Railroad Company*, (made a part of this charter,) which says, that the stockholders shall elect a certain number of directors, "to manage the affairs of said company." To be sure, *if this was* the only section at which we are to look, in order to decide whether others have not a right to vote with the directors appointed by the stockholders, we might conclude, that the president of the board was not allowed a vote; but for the same reason we should be obliged to deprive of their votes the directors, which, by another clause, are to be appointed by the State. When, however, we examine the different clauses which define the duties of the president and directors, what duties the president and directors, (they, "or a majority of them,") are to perform, we feel justified in concluding, that the president and the directors appointed by the State, have the same right to vote upon the various questions which are to be decided by the president and directors, as those who are elected by the stockholders.

If then the resolution was such an one as might be passed, the president had a right to vote, and being deprived of his vote, he was not bound to issue the bonds.

ORDER OF THE COURT BELOW AFFIRMED.